**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

U SWIRL, LLC,

        Plaintiff,

        v.

U-SWIRL INTERNATIONAL, INC., and
ROCKY MOUNTAIN CHOCOLATE
FACTORY, INC.,

        Defendants.

Civil Action No. 24-1243-GBW

---

Frederick B. Rosner, Zhao (Ruby) Liu, THE ROSNER LAW GROUP LLC, Wilmington, DE;
Robert Zarco, Robert F. Salkowski, Victoria Diaz, ZARCO EINHORN SALKOWSKI, P.A,
Miami, FL.

        *Counsel for Plaintiff*


Daniel A. O'Brien, VENABLE LLP, Wilmington, DE; Kostas D. Katsiris, Benjamin P. Argyle,
Guy G. Graney, VENABLE LLP, New York, NY.

        *Counsel for Defendants*

**<u>MEMORANDUM OPINION</u>**

May 18, 2026
Wilmington, Delaware

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Plaintiff U Swirl LLC's ("Plaintiff" or "U Swirl") Emergency Motion for Temporary Restraining Order and Preliminary Injunction against Defendants U-Swirl International, Inc. ("USI") and Rocky Mountain Chocolate Factory, Inc. ("Rocky Mountain") (collectively, "Defendants") (D.I. 43) [1], which has been fully briefed (D.I. 44; D.I. 50; D.I. 53), and Defendants' Partial Motion to Dismiss the Amended Complaint (D.I. 31), which has been fully briefed (D.I. 32; D.I. 34; D.I. 36). The Court has considered the parties' submissions and relevant law. For the reasons set forth below, the Court denies Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and grants Defendants' Partial Motion to Dismiss.

## I.    BACKGROUND

### A.    The Parties

Plaintiff is the owner and franchisor of a chain of self-serve frozen yogurt franchises containing the following brands: U-Swirl Frozen Yogurt, Cherry Berry, Yogurtini, Fuzzy Peach, Yogli Mogli, Let's Yo!, and Aspen Leaf Frozen Yogurt (the "Franchise System"). D.I. 28 ¶ 6. USI is the former owner and franchisor of the Franchise System. *Id.* ¶ 8. Rocky Mountain is the parent company of USI, as well as the owner and franchisor of chocolate and confectionary stores operating under the brand Rocky Mountain Chocolate Factory. *Id.* ¶ 9.

_____

[1] Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction is premised on the assertion that, absent the Court's intervention, the Facebook pages at issue would be permanently deleted on March 8, 2026. Defendants contend that the motion should be denied as moot because the date has passed. D.I. 54. Plaintiff concedes that the basis for emergency relief no longer exists, but asserts that the substantive relief sought remains "fully viable" for the Court's resolution. D.I. 55. The Court finds that, while the request for emergency relief is no longer warranted, the motion is not moot in its entirety.

**B.     The Asset Purchase Agreement ("APA") and the Transition Services Agreement ("TSA")**

In late 2022, U Swirl was presented with an opportunity by USI and Rocky Mountain to acquire the Franchise System. *Id.* ¶ 10. On May 1, 2023, Plaintiff entered into an Asset Purchase Agreement ("APA") with USI, as seller, and Rocky Mountain, as guarantor, for all of USI's assets, including its rights as franchisor for over fifty franchised frozen yogurt stores and the assets related to the operation of the Franchise System. *Id.* ¶ 17. The APA defines "Purchased Assets" as "(i) all of the assets necessary to conduct the Business in the Ordinary Course; and (ii) in good condition, normal wear and tear excepted." D.I. 46 § 5.8. "Purchased Assets" is also defined in Annex II of the APA, to include, *inter alia*, "all other Intangible Property of Seller relating to the Business or the operation thereof, to the extent transferable to Buyer." *Id.* at Annex II, iii. "Intangible Property" includes "(vii) any social or digital media, (viii) registrations, applications, all passwords and other account information for any of the foregoing." *Id.*, Ex. A.

On May 1, 2023, simultaneously with the execution of the APA, Plaintiff and USI executed the Transition Services Agreement ("TSA"), where USI was to provide certain services in respect to Plaintiff's business for a specified length of time. *Id.*, Ex. D. Among such services were marketing services, which included the "transfer [of] rights to corporate media pages." *Id.*, Ex. D at Annex A.

**C.     Relevant Evidence and Allegations Regarding the Motion for a Temporary Restraining Order and Preliminary Injunction**

As a result of the APA, Plaintiff purchased the corporate brand Facebook pages for Aspen Leaf Frozen Yogurt, CherryBerry, The Fuzzy Peach Frozen Yogurt Bar, U-SWIRL Frozen Yogurt, yogli mogli, Yogurtini Self Serve and Let's Yo! (collectively, the "Facebook Business Pages"). D.I. 44 at 3. The pages are maintained under two Meta Business Suite accounts, which are structured dashboards or administrative control centers where a business manages its business

3

pages, user permissions, analytics, and advertising. *Id.* at 3-4. Let's Yo! is maintained under the U-Swirl International Meta Business Account. *Id.* at 4. The remaining Facebook Business Pages are maintained under the USI Meta Business Account. *Id.* at 4.

After the closing of the APA, Plaintiff claims that USI failed to transfer ownership of the Facebook Business Pages to Plaintiff. *Id.* at 5. On September 13, 2023, Plaintiff was sent access to the USI Meta Business Account by an employee of Rocky Mountain. *See* D.I. 45-1 at 4. On the same day, Plaintiff sent an email to Ryan McGrath ("McGrath"), Rocky Mountain's Vice President of Information Technology, stating that access was accepted, but Plaintiff could not see any of its pages. *Id.* at 3. McGrath attempted to troubleshoot the issue and asserted that Plaintiff's account was set as "full access." [2] *Id.* Following a series of email exchanges to troubleshoot the issue, certain matters were resolved, but Plaintiff remained unable to log into Instagram or access the business page for Let's Yo!, which was managed under the U-Swirl International Meta Business Account. *Id.* at 2. The next day, September 14, 2023, McGrath stated he would investigate the issue. *Id.*

On March 9, 2024, Plaintiff opened a support case with Meta to obtain administrative access to both the U-Swirl International Meta Business Account and the USI Meta Business Account. *See* D.I. 45-2 at 8-9. Plaintiff explained to Meta that USI encountered errors in attempting to approve the request for administrative access and requested guidance on the steps necessary to proceed. *Id.* Meta informed Plaintiff that Plaintiff did not have a "sufficient role" and, to gain administrative access, Plaintiff would need to contact the administrator of the accounts. *Id.* at 7. Meta further advised that Plaintiff may raise an administrative dispute, which

---

[2] Plaintiff only received "full access" to the USI Meta Business Account, which was "user-level" only – not administrative access. D.I. 44 at 5.

is considered on a case-by-case basis when contact with the administrator cannot be established. *Id.* Plaintiff replied that the administrator, Rocky Mountain, had been contacted and provided Meta with a screenshot of the error received by the administrator. *Id.* Meta responded that the issue appeared to occur on the administrator site and that the administrator should reach out for further assistance. *Id.* Plaintiff then forwarded the correspondence to McGrath, who stated that they were working with Meta to resolve the issue and could not yet provide a timeline. *Id.* at 6.

On March 11, 2024, Meta confirmed that Plaintiff could not be added because the account was "currently restricted." *Id.* Meta explained that "[t]he only workaround for this [is] for the Admin of the Business Manager to appeal the restriction." *Id.* On March 15, 2024, McGrath informed Plaintiff that he and his team met with Meta, and Meta was escalating the case internally for review because of "restrictions of inactivity" on an account. *Id.* at 4-5. McGrath also stated he was waiting on Meta for a "final fix" and would update Plaintiff once he heard back from Meta. *Id.* at 3.

On March 19, 2024, Plaintiff sent Defendants a demand letter regarding Defendants' failure to provide assets to Plaintiff pursuant to the APA. D.I. 44 at 6. On March 23, 2024, Plaintiff followed up with McGarth regarding the issue. D.I. 45-2 at 2-3. Plaintiff thereafter contacted other Rocky Mountain personnel on April 26, 2024 seeking an update. *Id.* at 2. The same day, Tracy Wojick, Rocky Mountain's Corporate Secretary, responded that the issue was documented in their notes. *Id.* Despite multiple correspondence between the parties, Plaintiff never received administrative access to either the U-Swirl International Meta Business Account or the USI Meta Business Account. D.I. 44 at 6.

On February 3, 2026, Plaintiff received a notification from Facebook stating that its access to the USI Meta Business Account had been revoked. *Id.* at 6-7. The next day, February 4, 2026,

posts appeared on the six Facebook Business Pages maintained by the USI Meta Business Account falsely announcing the closure of each respective company. *Id.* at 7; *see also* D.I. 45-3. Plaintiff asserts that it had "no ability" to remove the posts, gain access, or publish corrections because access was revoked and administrator credentials had never been transferred. D.I. 44 at 7. On February 5, 2026, Plaintiff sent an urgent letter to Defendants, via counsel, demanding removal of the posts, restoration of Plaintiff's access, and the transfer of administrative control to both the U-Swirl International Meta Business Account and the USI Meta Business Account. *Id.*; *see also* D.I. 45-4. At the same time, Plaintiff advised all franchisees that the Facebook pages had been compromised and that the stores were not closing. D.I. 44 at 7. Despite its efforts, Plaintiff was "inundated" with communications from franchisees, customers, and the media. *Id.* at 8.

In response to Plaintiff's urgent letter, counsel for Defendants claimed that the issue was "promptly investigated" and "found no evidence whatsoever that [Rocky Mountain] is responsible for any of the conduct." D.I. 45-4 at 4. Defendants stated that their investigation confirmed that Rocky Mountain "does not have access to or administrative control" over the pages. *Id.* Defendants further claimed that members of Rocky Mountain verified their lack of access "directly by logging into RCMF's Meta Business Suite." *Id.* Defendants stated that the "most reasonable conclusion" was that the accounts "have been compromised or otherwise accessed by an unknown third party." *Id.* Plaintiff responded that the business pages at issue are managed through the U-Swirl International Meta Business Account, rather than RCMF's Meta Business Suite, and sought clarification on whether the proper account was investigated. *Id.* at 2.

On February 5, 2026, the posts falsely announcing the closure of stores were removed. D.I. 44 at 8. The same day, Plaintiff discovered that the Facebook page for Yogurtini was deleted in

its entirety. *Id.* The next morning, on February 6, 2026, Plaintiff discovered that the remaining Facebook pages maintained under the USI Meta Business Account were also removed. *Id.* at 9.

On February 27, 2026, Plaintiff brought this motion seeking relief in the form of a temporary restraining order and preliminary injunction. D.I. 43. Specifically, Plaintiff requests that the Court (1) temporarily restrain Defendants (and anyone in connection with them) "from posting, publishing, broadcasting or disseminating any content – including but not limited to announcements, statements, images, or graphics – through or on any of the U Swirl Business Facebook pages or any other social media accounts associated with the Franchise System; (2) order Defendants to take the necessary steps to cooperate with Meta for the restoration and reactivation of the six Facebook pages managed under the USI Meta Business Account; and (3) order Defendants "to transfer full administrative ownership and control of the USI Meta Business Account and the U-Swirl International Meta Business Account." *Id.* at 1-2.

## II.    LEGAL STANDARDS

### A.    Preliminary Injunction and Temporary Restraining Order

Preliminary injunctive relief is "aimed at temporarily preserving the status quo." *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020). The decision whether to grant or deny injunctive relief, either through the issuance of a temporary restraining order or preliminary injunction, "rests within the equitable discretion of the district courts." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006).

"A request for a TRO is governed by the same general standards that govern the issuance of a preliminary injunction." *Takeda Pharm. USA, Inc. v. West-Ward Pharm. Corp.*, No. 14-1268, 2014 WL 5088690, at *1 (D. Del. Oct. 9, 2014). To be entitled to such injunctive relief, the movant must establish (1) a likelihood of success on the merits of its claim; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4)

7

that the injunction is in the interest of the public. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). "Particular emphasis, however, is placed on the first two factors and a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm." *Abbott Cardiovascular Sys. v. Edwards Lifesciences Corp.*, No. 19-149, 2019 WL 3855015, at *1 (D. Del. Mar. 5, 2019) (cleaned up).

"An injunction is mandatory if it would alter the status quo by commanding some positive act." *Doe v. Del. State Univ. Bd. Of Trs.*, No. 20-1559, 2021 WL 2036670, at *2 (D. Del. May 21, 2021) (internal citations omitted). "[A] mandatory injunction is an extraordinary remedy that is only granted sparingly by the courts." *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F. 3d 131, 139 (3d Cir. 2013). A party seeking a mandatory injunction, rather than a prohibitory injunction, "bears a particularly heavy burden in demonstrating its necessity." *Acierno v. New Castle Cnty*, 40 F. 3d 645, 653 (3d Cir. 1994). The burden entails the moving party's right to right to relief must be "indisputable clear." *Air Canada & Aeroplan Inc. v. Localhost LLC*, No. 23-1177, 2024 WL 1251286, at *3 (D. Del. Mar. 14, 2024).

### B.    Motion to Dismiss under Rule 12(b)(6)

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere

8

conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)).  Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, No. 23-1078, 2024 WL 4103719, at *2 (D. Del. Sep. 6, 2024). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).  The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 23-239, 2024 WL 2804703, at *1 (D. Del. May 31, 2024).

## III.   DISCUSSION

### A.   The Court Denies Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction

Before turning to the merits, the Court addresses two preliminary issues: *first*, Defendants' argument that the motion is improper because the relief sought is "impossible"; and *second*, the appropriate standard for this motion.

*First*, Defendants primarily contend that they do not possess the login credentials for the accounts at issue and therefore lack the ability to transfer ownership or access. *See* D.I. 50 at 4.[3]

---

[3] In support of their position, Defendants cite to *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 140 (3d Cir. 2013) for the proposition that a mandatory injunction is unnecessary where the opposing party has no actionable conduct to restrain.  However, the case is

The Court, however, is not entirely persuaded by Defendants' position. While the Court recognizes it cannot compel, through injunctive relief, performance of an act that is genuinely impossible or beyond a party's control, the present record indicates that Defendants at one time exercised administrative control over *at least* one of the accounts at issue. *Cf. Chatham Fin. Corp. v. Milhaus, LLC*, 807 F. Supp. 3d 373, 391 (D. Del. 2025) (finding preliminary injunctive relief unwarranted where the party sought to be enjoined for alleged contractual breaches and misuse of the firm's technology platform no longer had access to that platform). What remains unclear is how such access was purportedly lost, and why Defendants are unable to identify who last had access, particularly given that Defendants appear to have been the last known holders. The answers to those questions are insufficiently developed based on the present record before the Court. Nevertheless, the Court concludes that the uncertainties surrounding the loss of access do not warrant the extraordinary remedy of injunctive relief. Those unresolved factual issues are better suited for resolution through further factual development rather than by emergency injunctive relief.

*Second*, the parties disagree as to the appropriate standard in this case. Plaintiff contends that it is attempting to enforce the status quo, thus the injunction is "properly characterized as prohibitory." D.I. 53 at 6. Defendants disagree, and claim that Plaintiff seeks to "unquestionably alter the status quo by compelling affirmative action[s]." D.I. 50 at 10. Courts have recognized that "[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics," and "determining whether the status quo is to be maintained, or upset has led to distinction that are more semantic than substantive." *See Voxtur Analytics Corp. v. Haldane*, No.

---

distinguishable, as it addresses an injunction under the Resource Conservation and Recovery Act ("RCRA"), which provides its own framework for relief.

25-742, 2026 WL 392641, at *12 (D. Del. Feb. 5, 2026) (citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F. 3d 27, 34 (2d Cir. 1995)). The Court declines to conclusively determine whether the relief sought is prohibitory or mandatory because Plaintiff fails to establish a likelihood of success under either standard. *See id.*

### 1.    Plaintiff Fails to Show a Likelihood to Succeed on the Merits

To demonstrate a likelihood of success on the merits of its breach of contract claim, Plaintiff must provide evidence of: (1) a contract; (2) breach of an obligation imposed by the contract; and (3) resulting damage to Plaintiff. *See VLIW Tech., LLC v. Hewlett-Packard Co.,* 849 A. 2d 606, 612 (Del. 2003).

The existence of the APA and TSA are undisputed. Therefore, the Court deems the first prong, existence of a contract, satisfied. The APA requires Defendants to provide Plaintiff with all social and digital media accounts, including associated passwords and account information, to the extent transferable. *See* D.I. 46 at Annex II, iii; Ex. A. Additionally, under the TSA, USI was to "transfer rights to corporate media pages" to Plaintiff. *Id.*, Ex. D at 2.

Plaintiff contends that Defendants breached their obligation, under the APA and TSA, by failing to transfer administrative access to Plaintiff. D.I. 44 at 10-11. Defendants respond that the APA requires transfer *only to the extent transferable* and Plaintiff has not demonstrated that "administrative control of [the] Meta Business accounts [was] transferable independent of Meta's approval and platform restrictions." D.I. 50 at 11. Defendants contend that the evidence shows that Rocky Mountain personnel made repeated efforts to grant access, which were unsuccessful due to Meta platform limitations and/or Plaintiff's own mistakes. *Id.* Therefore, Defendants contend that Plaintiff cannot show that Defendants breached its obligation. *Id.* at 12.

After careful consideration of the declarations and evidence submitted, the Court is not convinced that Plaintiff is likely to succeed on the merits of its claim that Defendants failed to

11

satisfy their obligation to transfer the accounts, to the extent transferable, under the APA. Plaintiff contends that the language "to the extent transferable" does not excuse Defendants' failure to perform because it refers to legal transferability, not Defendants' failure to take the administrative steps required to effectuate a transfer. D.I 53 at 7. However, Plaintiff cites to nothing in the APA that limits "to the extent transferable" to legal transferability. Thus, the Court cannot find that Plaintiff has established a likelihood of success on its claim for breach of contract on the record before the Court. Furthermore, while Plaintiff characterizes Defendants' conduct as constituting "admissions" of breach, the evidence currently before the Court indicates that Defendants actively investigated the matter and worked directly with Meta to rectify the issue. *See* D.I. 45-1 (correspondence with McGrath and Plaintiff related to account access); *see also* D.I. 45-2 (correspondence between Plaintiff, McGrath, and Meta working to resolve the issue). At some point in time the proverbial ball appears to have been dropped. While the Court finds the circumstances surrounding that lapse questionable, they do not provide an adequate basis for the extraordinary remedy of an injunction. *See Free Speech Coal., Inc. v. Att'y Gen. United States*, 974 F.3d 408, 430 (3d Cir. 2020) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.")

At this stage of the proceedings, the Court finds that Plaintiff has not shown a likelihood of success on its claim that Defendants breached the APA and TSA by failing to transfer the accounts. Rather, the evidence presented is more consistent with efforts to address issues associated with the transfer and administration of the accounts. Thus, Plaintiff has failed to meet its burden to establish a likelihood of success on the merits.

### 2.    The Court Need Not Address the Remaining Factors

Having found that, based on the present record, Plaintiff has failed to show a likelihood of success on the merits, the Court must deny Plaintiff's Motion for a Temporary Restraining Order

12

and Preliminary Injunction. *See Reilly*, 858 F.3d at 179 (to be entitled to preliminary injunctive relief, a movant must establish that it is both likely to succeed on the merits *and* that is more likely than not to suffer irreparable harm absent an injunction) (emphasis added); *Univar Sols. Inc. v. Geisenberger*, No. 18-1909, 2022 WL 2064990, at *10 (D. Del. June 8, 2022) ("The absence of either a reasonable likelihood of success or of irreparable harm is sufficient to deny Plaintiff's request for a preliminary injunction.").

For the reasons set forth above, Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction against Defendants (D.I. 43) is denied.

## B.    The Court Grants Defendants' Partial Motion to Dismiss

Defendants move to dismiss Counts I and IV of Plaintiff's Amended Complaint, which assert claims for breach of contract and fraudulent inducement. D.I. 32. For the reasons discussed below, the Court grants Defendants' Partial Motion to Dismiss.

### 1.    The Amended Complaint Fails to State a Claim for Fraudulent Inducement (Count IV)

Defendants first challenge the sufficiency of Plaintiff's claim for fraudulent inducement. D.I. 32 at 5-11. Specifically, Defendants contend that Plaintiff's Amended Complaint fails to satisfy the pleading standards set forth in Fed. R. Civ. P. 9(b) and fails to plead damages for fraud that are distinct from Plaintiff's contract damages. D.I. 32 at 5.

Defendants contend that the Amended Complaint fails to meet the heightened pleading standard because it "does not identify the dates the at-issue representations were made, where or in what context they occurred, the methods of communication used to make those representations or how they were conveyed, whether the speaker had knowledge of falsity of the alleged representation, the job title of the speaker(s), or any specific quoted language relating to these alleged statements." D.I. 32 at 6. Defendants further contend that the Amended Complaint "does

13

not put Defendants on notice as to whether the claim for fraudulent inducement is based on APA Representations or Pre-Closing Representations." *Id.* at 7.

Plaintiff disagrees. In Plaintiff's view, the Amended Complaint pleads that Defendants represented in § 5.9 of the APA that all material contracts and any other agreements essential for the operation of the business were completely and accurately disclosed. D.I. 34 at 5 (citing D.I. 28 ¶¶ 22, 45). Plaintiff alleges that, despite knowing that key relationships were not disclosed, USI misrepresented the completeness of the material contracts to induce Plaintiff to enter into the APA and pay a purchase price. *Id.* (citing D.I. 28 ¶ 50). Plaintiff further alleges that certain material contracts were not disclosed, including a vendor contract with Otis Spunkmeyer; six additional distributor relationships, yielding a total of sixteen distributors, rather than the nine disclosed; and the existence of the Airport Kiosk, a frozen yogurt kiosk, which Plaintiff learned after closing was operating in the Denver International Airport. *Id.* (citing D.I. 28 ¶¶ 46-49, 70-74).

Under Federal Rule of Civil Procedure 9(b), a plaintiff must plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Thus, to state a claim for fraudulent inducement, "plaintiff must plead with particularity the following elements: (1) a false representation of material fact; (2) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such." *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, No. 11141-VCS, 2016 WL 5243950, at *7 n.34 (Del. Ch. Sept. 22, 2016) (*quoting Duffield Assocs., Inc. v. Meridian Architects & Eng'rs, LLC*, 2010 WL 2802409, at *4 (Del. Super. Ct. July 12, 2010)).

14

The Court finds that Plaintiff has sufficiently pled the elements for fraudulent inducement. "When a party sues based on a written representation in the contract . . . it is relatively easy to plead a particularized claim of fraud." *Agspring Holdco, LLC v. NGP X US Hldgs., L.P.*, 2020 WL 4355555, at *13 (Del. Ch. July 30, 2020). "This is because the plaintiff can readily identify who made what representations where and when, because the specific representations appear in the contract." *Id.* The Amended Complaint alleges that Defendants represented that they disclosed each and every material contract related to the Franchise System pursuant to § 5.9 of the APA. D.I. 28 ¶ 22. "Having pointed to the representations, [Plaintiff] need only allege facts sufficient to support a reasonable inference that the representations were knowingly false." *Prairie Cap. III, L.P. v. Double E Hldg. Corp.*, 132 A. 3d 35, 62 (Del. Ch. 2015).

The Amended Complaint outlines specific facts that support the inference that Defendants knew that they did not disclose all material contracts as required by the APA. Specifically, the Complaint alleges that (1) USI was the former owner of the Franchise System and Rocky Mountain is the parent company of USI, (*see* D.I. 28 ¶¶ 6, 8), (2) Defendants denied Plaintiff the right to speak with any vendor of the Franchise Systems prior to closing, (*id.* ¶ 14), (3) Defendants represented that an accurate and complete list of all vendor and supplier contracts were disclosed, (*id.* ¶ 45), (4) Plaintiff learned post-closing that Defendants had a vendor contract with Otis Spunkmeyer, which was not a part of the material contracts disclosed by Defendants, (*id.* ¶¶ 45-48), (5) Plaintiff also learned post-closing that Defendants did not disclose seven distributor relationships (*id.* ¶ 49), (6) Defendants represented, during negotiations, that the Airport Kiosk was a concept idea, (*id.* ¶¶ 70-74), and (7) Plaintiff learned, post-closing, that the Airport Kiosk was operational and Defendants collected royalty and fees associated with the sale of products (*id.* ¶¶ 70-74). Such allegations are sufficient for the Court to reasonably infer that Defendants

15

provided Plaintiff with knowingly false information about its material contracts to induce Plaintiff into executing the APA. *See DDS Striker Holdings, LLC v. Verisk Analytics, Inc.*, No. N24C-02-130, 2024 WL 3983973, at \*4 (Del. Super. Ct. Aug. 29, 2024). The Amended Complaint also sufficiently alleges that Defendants intended to induce Plaintiff into the contract (*id.* ¶¶ 50, 113); Plaintiff acted in justifiable reliance on the representation (*id.*); and Plaintiff was injured by its reliance on the representation (*id.* ¶¶ 51-52, 113, 116).

### a.    The Amended Complaint Satisfies Fed. R. Civ. P. 9(b)

The Court finds that the Amended Complaint meets Rule 9(b)'s particularity requirements as well. The Amended Complaint alleges that closing was May 1, 2023, and the representations were made "prior to", "at closing" and "post closing." *Id.* ¶¶ 14, 15, 17, 18, 70. While the Amended Complaint does not specify the "place" where the representations were made, "identifying the physical situs where representations are made loses its force as a prophylaxis against fraud where people regularly communicate via telephone and email from anywhere in the world." *Media, Inc. v. Faith7, Inc.*, No. N24C-05-247, 2024 WL 4524844, at \*3 (Del. Super. Ct. Oct. 18, 2024); *see also Yavar Rzayev, LLC v. Roffman*, No. S14L-12-035, 2015 WL 5167930, at \*4 (Del. Super. Ct. Aug. 31, 2015) ("Delaware courts have . . . consistently found that the date, place, and time allegations are not required so long as the pleading put defendants on notice of the misconduct with which they are charged."). The Amended Complaint further alleges that Greg Pope, an executive at Rocky Mountain, made representations regarding the Airport Kiosk to Nimesh Dahya, a representative of Plaintiff. *See* D.I. 28 ¶¶ 70-71. Furthermore, "when the basis of the alleged misrepresentation is contained in a written contract, the particularity requirement is relaxed because the who, what, where and when are imbedded in and easily ascertained from the contract." *Mosaic US Holdings LLC v. Atlas Tech. Sols., Inc.*, No. N24C-05-118, 2025 WL 483064, at \*7 (Del. Super. Ct. Jan. 22, 2025). Therefore, the Court finds that Plaintiff has

16

sufficiently alleged "the circumstances of the alleged fraud with sufficient particularity to place [Defendants] on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F. 3d 188, 200 (3d Cir. 2007).

> **b.      Plaintiff's Fraudulent Inducement Claim Is Not a Bootstrapped Breach of Contract Claim**

Defendants assert that Plaintiff's claim for fraudulent inducement is duplicative of its breach of contract claims because the conduct at issue is identical. D.I. 32 at 7-8. Under Delaware law, "a contracting party may not 'bootstrap' a breach of contract claim into a fraud claim merely by adding the words 'fraudulently induced' or alleging that the contracting parties never intend to perform." *Swipe Acquisition Corp. v. Krauss*, No. 2019-0509, 2020 WL 5015863, at *11 (Del. Ch. Aug. 25, 2020) (citing *Iotex Comm'cns, Inc. v. Defries*, No. 15817, 1998 WL 914265, at *5 (Del. Ch. Dec. 21, 1998)). "Generally, the anti-bootstrapping rule applies when a plaintiff attempts to transmute a breach of contract claim into a fraud claim by adding conclusory allegations to its breach of contract allegations." *Id.*

The Court finds that Plaintiff is not bootstrapping its breach of contract claims into a fraud claim. "Contractual representations may form the basis for a fraud claim where a plaintiff has alleged facts sufficient to support a reasonable inference that the representations were knowingly false." *Id.* (internal citations omitted). Plaintiff's breach of contract claims arise from Defendants' alleged failure to perform obligations imposed by the APA and TSA, while the fraud claim is based upon alleged misrepresentations made during negotiations with the intent to induce Plaintiff to enter into the APA. As discussed *supra* in Section III.B.1, Plaintiff has sufficiently alleged a reasonable inference that Defendants provided Plaintiff with knowingly false information about its material contracts. These particularized allegations set forth a properly pled claim for fraudulent inducement. *See id.* ("[T]he anti-bootstrapping rule does not apply where a plaintiff

has made particularized allegations that a seller knew contractual representations were false or lied regarding the contractual representation, or where damages for plaintiff's fraud claim may be different from Plaintiff's breach of contract claim."); *V-ME Media, Inc.*, 2024 WL 4524844, at *4 ("Delaware courts routinely recognize an exception to this 'bootstrap' rule where a plaintiff pleads that the seller knew that the company's contractual representations and warranties were false when made." (cleaned up)).

**c.      Plaintiff's Fraudulent Inducement Claim Is Not Barred by the Anti-Reliance Representation.**

Defendants contend that Plaintiff's fraudulent inducement claim should be dismissed to the extent it is premised on alleged representations made prior to the execution of the APA.  D.I. 32 at 8.  Defendants further contend that the APA expressly provides that Plaintiff could not rely on any representations other than those contained in the APA.  *Id.*  Defendants claim that, since the APA contains an anti-reliance representation, Plaintiff is prohibited under Delaware law from "reneging" on the representation.  *Id.*  Plaintiff responds that Defendants' argument is inapplicable and mischaracterizes the basis for Plaintiff's claim.  D.I. 34 at 8.  Plaintiff claims that the fraud claims "are not premised on pre-closing representations standing alone," but are "relevant insofar as it supports the reasonable inference that Defendants' contractual representations were knowing false when made."  *Id.*

The Court agrees with Plaintiff that none of its fraud claims are premised on pre-closing representations standing alone.  To the extent the Amended Complaint references pre-closing statements, such references are provided solely for factual context.  *See Cablemaster LLC v. Magnuson Grp. Corp.*, No. N23C-05-185, 2023 WL 8678043, at *7 (Del. Super. Ct. Dec. 5, 2023) ("The Complaint does refer to extra-contractual statements; but it does so only to furnish the

18

dispute's factual context."). Therefore, the Court finds that the anti-reliance representation does not bar Plaintiff's claim for fraudulent inducement.

> **d.** **Plaintiff's Fraudulent Inducement Claim Fails to Adequately Plead Damages Arising From Fraud Separate and Apart from Breach of Contract Damages**

Defendants contend that Plaintiff's claim for fraudulent inducement fails to allege damages distinct from Plaintiff's breach of contract claim. D.I. 32 at 10. Specifically, Defendants highlight that the same language for damages is used for every count of the Complaint: "U Swirl has suffered and continues to suffer substantial damages." *Id.* (citing to D.I. 28 ¶¶ 99, 104, 110, 116). Defendants contend that the vague language falls "woefully short of alleging damages that are separate and distinct from its breach of contract claim." *Id.* Plaintiff responds that "wholly different damages" is not a separate requirement of a fraud claim. D.I. 34 at 9. Plaintiff further asserts that, even if such a requirement exists, it is met because the alleged damages stem from Plaintiff entering into a transaction that, absent the fraud, it would not have entered or would have negotiated differently. *Id.* at 9-10.

Under Delaware law, "in cases involving both a breach of contract and an allegation of fraud, damages from the fraud must be pled 'separate and apart from . . . breach damages.'" *Norman v. Elkin*, 860 F.3d 111, 130 (3d Cir. 2017) (quoting *Cornell Glasgow, LLC v. La Grange Props., LLC*, No. N11C-05-013, 2012 WL 2106945, at *9 (Del. Super. Ct. June 6, 2012)). To successfully plead a fraud claim, "the damages allegations may not simply 'rehash' the damages allegedly caused by the breach of contract." *Cornell*, 2012 WL 2106945, at *9 (citing *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. 762-N, 2005 WL 2130607, at *7 (Del. Ch. Aug. 26, 2005)). Plaintiff must seek "damages that are qualitatively different from those available for breach of contract." *WIA Holdings LLC v. Scottish Am. Cap. LLC*, 2026 WL 1204494, at *13 (Del. Ch. Jan. 20, 2026). Failure to plead separate damages is an "independent ground for dismissal." *EZLinks*

19

*Golf, LLC v. PCMS Datafit, Inc.*, No. N16C-07-080, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017) (citing *Cornell*, 2012 WL 2106945, at *9).

Plaintiff has not sufficiently differentiated its breach of contract damages from its fraudulent inducement damages. "[A]t the pleading stage, a plaintiff is not required to articulate exactly how the fraud and breach of contract damages diverge." *Partners & Simons, Inc. v. Sandbox Acquisitions, LLC*, No. 2020-0776, 2021 WL 3159883, at *5 (Del. Ch. July 26, 2021). However, Plaintiff fails to show that the damages for its fraud claim are independent from the damages for its breach of contract claims. *See Cornell*, 2012 WL 2106945, at *9. Plaintiff alleges nearly identical damages for each cause of action in vague and conclusory terms, without identifying specific harm. *See* D.I. 28 ¶¶ 99, 104, 108. Although Plaintiff asserts that it "may be entitled to greater damages including losses sustained based on overpayment of the initial transaction," Plaintiff did not plead such damages in the Amended Complaint. *See WIA Holdings LLC*, 2026 WL 1204494, at *13. Thus, Plaintiff's claim for fraudulent inducement is deficient and must be dismissed for failure to plead damages from the fraudulent inducement separate and apart from the damages alleged caused by the breach of contract.

### 2. The Amended Complaint Fails to State a Claim for Breach of Contract (Count I) to the Extent the Claim Attempts to Plead a Breach of an Implied Covenant

Defendants claim that Plaintiff's breach of contract claim against USI should be dismissed to the extent it relies on implied terms because the Amended Complaint fails to identify any specific implied obligation in the contract. D.I. 32 at 11. Defendants assert that the Amended Complaint contains no allegations of a breach of an implied contractual obligation, and that Plaintiff merely tacks on the word "implied" in an effort to assert a claim. *Id.* Plaintiff responds that it sufficiently alleged Defendants breached implied covenants because "Plaintiff's allegations

establish a reasonably conceivable gap in the contract that gives rise to its breach of implied covenant claims." D.I. 34 at 10-11.

To plead a breach of implied covenant, a plaintiff "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1117 (Del. 2022). "A valid implied covenant claim requires more than general allegations of bad faith conduct; the plaintiff must allege a specific implied contractual obligation and a breach of that obligation that precluded the plaintiff from enjoying their reasonable expectations of the bargain." *Stewart v. BF Bolthouse Holdco, LLC*, No. 8119, 2013 WL 5210220, at *15 (Del. Ch. Aug. 30, 2013). Furthermore, "[a]pplying the implied covenant is a cautious enterprise and [the court] will only infer contractual terms to handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Stewart v. BF Bolthouse Holdco, LLC*, No. 8119, 2013 WL 5210220, at *15 (Del. Ch. Aug. 30, 2013) (internal citations omitted).

The Court finds that Plaintiff's Amended Complaint does not adequately plead a claim for breach of an implied covenant. Plaintiff does not allege that any specific implied contractual obligation exists, but instead centers on alleged breaches of express contractual terms. Plaintiff points to alleged conduct by Defendants such as, "refusing to provide essential sales reporting information" and failure to transfer the gift card vendor program. D.I. 34 at 11. However, as Defendants articulated, this conduct is outlined and expressly governed by the APA. *See* D.I. 36 at 6. Plaintiff improperly attempts to recast its breach of contract claim as one for breach of implied covenant, notwithstanding that an implied covenant cannot be used to circumvent or override express contractual provisions. *See Fortis Advisors LLC v. Dialog Semiconductor PLC*, No. 9522, 2015 WL 401371, at *5 (Del. Ch. Jan. 30, 2015) (holding that the "failure to achieve the earn-out

21

revenue thresholds must be analyzed within the confines of the express contractual obligations set forth in that provision and any other applicable provision" and not through the implied covenant of good faith and fair dealing).  Thus, Plaintiff fails to state a claim upon which relief can be granted for its breach of contract claim, to the extent the breach of contract claim relies upon implied terms.

For the reasons discussed above, the Court grants Defendants' Partial Motion to Dismiss (D.I. 31).

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff U Swirl LLC's Emergency Motion for Temporary Restraining Order and Preliminary Injunction against Defendants U-Swirl International, Inc. and Rocky Mountain Chocolate Factory, Inc (D.I. 43) is **DENIED** and Defendants' Partial Motion to Dismiss the Amended Complaint (D.I 31) is **GRANTED** with respect to Count IV (Fraudulent Inducement) and Count I (Breach of Contract) to the extent the breach of contract claim relies on implied terms not set forth in the Amended Complaint.

The Court will issue an Order consistent with this Memorandum Opinion.